**RUSSELL v. BAUGH.**

No. 35546.

Supreme Court of Oklahoma.

Sept. 29, 1953.

Rehearing Denied Nov. 24, 1953.

King & Wadlington, Ada, for plaintiff in error.

W. V. Stanfield, Ada, for defendant in error.

O'NEAL, Justice.

In this action R. E. Russell sought to recover an undivided one-half interest in the surface rights and an undivided 1/16th interest in the mineral rights in 120 acres of land in Pontotoc County, Oklahoma. In the trial court judgment was rendered in favor of the defendant and from the order overruling plaintiff's motion for a new trial, plaintiff appeals.

The parties appear here in the same position as in the court below.

Plaintiff, R. E. Russell and Lou Baugh were married in December, 1926. Lou Baugh had been previously married and the defendant, Coy Baugh, is the son of Lou by her previous marriage.

Plaintiff pleaded that on April 30, 1931, Janie Isaacs deeded the 120 acres of the Pontotoc County land to the plaintiff, but that Lou Russell was named grantee in said deed. Plaintiff claims that he paid the purchase price for said land, and that Lou held a one-half interest in said land and a 1/16th interest in the mineral rights therein in trust for the plaintiff.

Plaintiff further pleaded that he, joined by his wife, Lou Russell, deeded the land herein involved to the defendant in consideration of the payment of $2,500, less taxes then due and delinquent; that defendant has paid no part of said consideration. Plaintiff at great length pleads that Lou Russell was incompetent to execute the deed in question, and that the deed was not to be delivered to defendant until the purchase price was fully paid, and that plaintiff and Lou Russell never appeared before a notary public and acknowledged the execution of the deed. Upon these grounds plaintiff prays for a judgment quieting his title in an undivided one-half interest in the land and a 1/16th interest in the mineral rights therein.

The answer of the defendant, Coy Baugh, admits that Janie Isaacs deeded the land to Lou Russell, but denies that the same conveyed any interest, either legal or equitable to the plaintiff. Defendant denies that the plaintiff paid any part of the purchase price of the land but, on the contrary, that Lou Russell paid the full purchase price thereof from the proceeds of leases and royalties upon the land. Defendant admits that he is the son of Lou Russell, and that Lou Russell and the plaintiff, R. E. Russell, conveyed the land to him by warranty deed, dated November 30, 1949, and that said deed was recorded the same date with the County Clerk of Pontotoc County, Oklahoma, and that he has been in continuous possession of said land from said date. He further pleads that prior to the execution and delivery of said deed, plaintiff and Lou Russell abandoned said land as their homestead, sold their household goods and moved to the city of Ada, Oklahoma; that Lou

Russell and the plaintiff were unable financially to provide for her necessities and that in consideration of defendant agreeing to provide for his mother's necessities during her lifetime that she, joined by plaintiff, executed the deed on November 30, 1949, to the defendant. Defendant specifically denies that he agreed to purchase the land from the plaintiff and his mother for the sum of $2,500, less the delinquent taxes then due upon said land.

▌ The proof substantially discloses that Verna Baugh, the wife of the defendant, Coy Baugh, on December 27, 1949, accompanied Lou Russell to the Oklahoma State Bank at Ada, Oklahoma. That Mrs. Coy Baugh there made out a check in the sum of $2,500, payable to Lou Russell. The check bore the signature of Coy Baugh's grocery by Verna Baugh. The check was cashed and the money handed to Lou Russell. Mrs. Russell then returned the $2,500.00 to Verna Baugh who redeposited it in the account of Coy Baugh's grocery. This transaction occurred a month after the deed was executed by plaintiff and his wife, delivered to the defendant, and recorded in the office of the County Clerk. The evidence discloses that the defendant had no knowledge of, or did he consent or ratify the foregoing transaction.

A brother of Lou Russell, who was visiting at the defendant's home in Ada, Oklahoma on Thanksgiving day 1949, testified that Mr. Stanfield, an attorney, and a notary public, came to the defendant's home in the latter part of November, 1949, and that the attorney handed a deed to plaintiff and Lou Russell, and that each of them signed the deed and that the notary public took the acknowledgment of the signature of the plaintiff and his mother to said deed.

With reference to the circumstances leading up to the signing of the deed, the plaintiff testified that Mr. Stanfield asked him and his wife if they were executing the deed as their voluntary act; that they each stated that they were and thereupon signed the deed; that a young lady, acting as a notary public, took their acknowledgments at the same time; that he observed the notary put her seal upon the deed and then hand the

deed to Mr. Stanfield, who, in turn, turned it to the defendant. The notary public's testimony in all respects corroborates the circumstances of the signing of the deed and the taking of the acknowledgments thereto as testified to by the plaintiff. The evidence of the plaintiff that he paid the purchase price of the land represented in the deed from Janie Isaacs to Lou Russell, dated March 3, 1937, is not supported by any corroborating evidence and is of doubtful validity in view of the evidence of the impecunious condition of the plaintiff throughout his married life.

The proof discloses that Lou Russell died on May 12, 1950, and that prior to the execution of said deed and at all times prior to her death, she was a competent person, and that the disposition of her land was pursuant to an agreement with defendant that he would supply her necessities during her lifetime.

The witness, Ed Gunter, a brother of Mrs. Russell, testified that his sister in November and December, 1949, told him she wanted the defendant and his wife to have the land, and that his sister was a competent person during said months; that the defendant stated several days prior to the execution of the deed, that he intended to provide for his mother and pay all of her bills. We find there is no evidence to support plaintiff's allegation that due to his wife's physical and mental condition she was incompetent to execute the deed in question.

The defendant testified that he at no time offered or agreed to buy the land for the sum of $2,500; that during the married life of plaintiff and his mother he contributed substantial sums to their support; that the taxes on the land were delinquent for the years 1931 and 1938, inclusive, in the sum of $851.26, including penalties; that the defendant, in compliance with his agreement, paid his mother's living expenses in the sum of $931.94, and that after her death he paid her debts and funeral expenses. He stated he did not authorize his wife to draw a check to his mother in the sum of $2,500, and did not know of the transaction until three weeks thereafter. He testified that the purchase price of the land covered by

the Isaacs deed to his mother was paid by her from the proceeds of an oil and gas lease upon the land executed to W. A. Delaney, Jr., and from the sale of mineral rights upon said land.

The foregoing recitation of the proof submitted in conjunction with other facts disclosed by the record, leads us to the conclusion that plaintiff wholly failed to sustain the allegations of his petition that his wife was either incompetent, under duress, or undue influence, when she joined with plaintiff in executing the deed in question. There is an absolute failure of proof to establish any fraud in the transaction involved.

This being an equity case it is governed by the rule announced in Travis v. McCully, 186 Okl. 378, 98 P.2d 595, wherein it is said:

"In a case of equitable cognizance the appellate court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal unless it is made to appear that such findings and judgment are against the clear weight of the evidence."

To the same effect see O'Neal v. Upton, 202 Okl. 403, 214 P.2d 712 and Clements v. Mee, 208 Okl. 201, 254 P.2d 354.

Therefore, the judgment of the trial court is affirmed.